9 P.3d 1222

John STEVENSON and Elizabeth Stevenson, husband and wife, Twin Falls, March Term of Court Petitioners–Appellants,

v.

BLAINE COUNTY, a political subdivision of the State of Idaho, and the Blaine County Commissioners, Respondents,

and

HG2 Limited Partnership, an Idaho limited partnership, Intervenor–Respondent.

Nos. 25123, 25124.

Supreme Court of Idaho, Twin Falls, March Term of Court.

Sept. 5, 2000.

Luboviski, Wygle, Fallowfield, & Williamson, Ketchum, for appellants. Ned C. Williamson argued.

Blaine County Prosecutor, Hailey, for respondent Blaine County. Douglas A. Werth argued.

Rosholt, Robertson & Tucker, Twin Falls, for respondent HG2. Gary D. Slette argued.

SCHROEDER, Justice.

This is a land-use case involving John and Elizabeth Stevenson (Stevensons), the Blaine County Board of Commissioners (the Board),

and HG2 limited partnership (HG2). The Stevensons and the Board have appealed the district court's decision which affirmed the Board's approval of the final plat for Phase II of the Prairie Sun Ranch Subdivision owned by HG2. The Board has appealed even though the district court ruled in favor of the Board's determination. This anomaly arises from the fact that there was a change in the composition of the Board, and members of the later Board disagreed with the decision of the members of the earlier Board.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

HG2 owns 410.52 acres of prime agricultural property located approximately four miles south of Bellevue, Idaho. HG2 proposed a two-phase subdivision, consisting of Phase I with five lots in the northeast portion of Prairie Sun and Phase II with fourteen lots for the remainder of the subdivision. HG2's application for the preliminary plat for both phases was approved by the Board on October 16, 1995. HG2's application for the final plat for Phase I was approved by the Board on January 8, 1996. HG2's application for the vacation of Parcel G and for the final plat for Phase II was approved by the Board on September 15, 1997.

The Stevensons have farmed in Blaine County for the last twenty-five years. They are the owners of the Hillside Ranch. Their property consists of two sections directly west and south of and contiguous to Prairie Sun with approximately two miles of frontage with proposed Phase II. Phase I of the Prairie Sun is approximately one-half mile from the Stevenson property and does not abut any of the Stevensons' property.

During public hearings conducted by the Board in 1997 on HG2's application for the vacation of Parcel G and the subdivision of Phase II into fourteen lots, the Stevensons submitted evidence about potential conflicts which could arise when residential subdivisions are located by active productive agricultural tracts. The conflicts include noise, farm machinery traffic, vandalism, and trespassing. The Stevensons also argued that the proposed subdivision would not conform with the Blaine County Comprehensive Plan.

The Board eventually approved the applications for the vacation of Parcel G and the subdivision of Parcel G into fourteen lots. Before the Board's approval, the Board, through Chairman Leonard Harlig, announced that Prairie Sun would not meet a standard of evaluation for the subdivision ordinance which requires compliance with the Comprehensive Plan. Despite these comments, the Board approved the subdivision for Phase II. The Board issued findings of fact and conclusions of law and found, under Blaine County Subdivision Ordinance § 10–4–5(E), that the final plat for Phase II of the Prairie Sun "conforms to the policies of the Comprehensive Plan." However, the Board's findings included the following statement:

The findings made by the Board on the preliminary plat (Exhibit Z) were re-affirmed and re-stated by the Commission in recommending approval of the first phase final plat [Phase I] (Exhibit 002). The Board accepted the recommendations of the Commission on the first phase final plat as shown in Exhibit 003, II. Findings of Fact.

The decision by the Board to approve the first phase final plat [Phase I] together with the findings that the proposed subdivision sufficiently conformed to the Comprehensive Plan was never appealed. There has been no material change in the proposed subdivision from the preliminary plat approved by the Commission (Exhibit X) and the Board (Exhibit Z). Therefore, the current Board does not believe that it may lawfully re-visit the findings of fact with regard to Comprehensive Plan compliance made by the previous (as seated in October of 1995) Board of County Commissioners on the final plat of the first phase. The entire subdivision, both phases, relied on the same preliminary plat and the findings made with regard thereto.

As described in Exhibit 016, the Board has determined that Blaine County's Zoning and Subdivision Ordinances are in conformance with its Comprehensive Plan, particularly as these County laws relate to residential subdivision in agricultural-dis-

trict lands. In addition, the application of the entirety of the Zoning and Subdivision Ordinances confirms that the residential subdivision of agricultural lands must be part of an orderly growth pattern, and must not require the uneconomic expenditure of County funds for the provision of services. More importantly, the preservation of agricultural lands is required in each Ordinance and the Plan. While an informed analysis of the Ordinances and the Plan would not permit this Board to find that the Prairie Sun Subdivision conforms with either the County's Ordinances or Plan, this Board also believes that it may not have the ability to lawfully re-visit the previous Board's findings on Prairie Sun's conformance to the Plan and Ordinances.

The Board also reviewed a standard that required Phase II to conform with the Subdivision Ordinance. The Board made essentially the same finding about conformance with the Subdivision Ordinance as it made about conformance with the Comprehensive Plan.

The Stevensons filed a petition for judicial review, listing as issues:

(a) Whether the Board's action was in violation of constitutional or statutory provisions, requirements, and procedures.

(b) Whether the Board's action was in excess of the statutory authority of the Respondents.

(c) Whether the Board's action was made upon unlawful procedures and irregularities.

(d) Whether the Board's action was arbitrary, capricious, or an abuse of discretion.

(e) Whether the Board's action was affected by other errors of law.

(f) Whether the Board's action was supported by substantial evidence on the whole record.

(g) Whether the Board made an improper finding of fact that the Board could not "lawfully re-visit the findings of fact with regard to Comprehensive Plan compliance."

(h) Whether the Board had authority to approve the subdivision plat when the final plat did not conform to the Blaine County Subdivision Ordinance and Blaine County Comprehensive Plan.

(i) Whether the Board's approval of Phase I of the Prairie Sun Ranch Subdivision is a final decision precluding a review of compliance of Phase II with the Blaine County Subdivision Ordinance and Blaine County Comprehensive Plan.

(j) Whether the Board had to make findings of fact and conclusions of law to allow the vacation of Parcel G.

(k) Whether attorneys' fees and costs should be awarded pursuant to Idaho Code § 12–117.

In its first memorandum decision the district court held that the Board did have the authority to revisit the factual findings regarding conformance with the Subdivision Ordinances and the Comprehensive Plan made during the approval of Phase I. The district court remanded the findings to the Board to make current findings of fact in consideration of Blaine County Subdivision Ordinance § 10–4–5(E), which provides in pertinent part that "the Board shall determine whether the final plat conforms to the conditions required on the preliminary plat, regulations of this Title, policies of the Comprehensive Plan and provisions for the public health, safety and welfare."

HG2, the intervenor, filed a motion for reconsideration. The district court issued a substitute memorandum decision which stated in relevant part:

Another examination of the record revealed that the Board in fact did make a final plat approval of Phase II despite the above stated reservation.[1] The Board made specific Findings that all conditions attached to final approval of Phase I and the preliminary approval of Phase II had been complied with. A Finding was made indicating that there had been no material change in the proposed subdivision from the preliminary plat previously approved and that the applicable provisions of the

---

**1.** The reservation the district court refers to is about the Board's ability to re-visit the Findings of Fact pursuant to Blaine County Subdivision Ordinance § 10–4–5(E).

Blaine County Subdivision Ordinance and the Blaine County Zoning Ordinance had been complied with.

Under these circumstances, the Court is of the opinion that the Board has properly given Phase II final plat approval. The Court concurs with Judge Hart's decision in *Urrutia* and *Reed v. Blaine County* as to how the Blaine County Comprehensive Plan applies to cases such as this.

The County and the Stevensons appealed the district court decision.

## II.

## STANDARD OF REVIEW

The standard of review applicable in this case is set forth in *Urrutia v. Blaine County*, 134 Idaho 353, 2 P.3d 738 (2000):

The Idaho Administrative Procedures Act (IDAPA) governs the review of local administrative decisions. *Comer v. County of Twin Falls*, 130 Idaho 433, 437, 942 P.2d 557, 561 (1997). In an appeal from the decision of a district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Id.; Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996). The Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1). The Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998) (citing *South Fork Coalition v. Bd. of Comm'rs of Bonneville County*, 117 Idaho 857, 860, 792 P.2d 882, 885 (1990)). In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by competent evidence in the record. *Id.* Here, the Board is treated as an administrative agency for purposes of judicial review. *See South Fork*, 117 Idaho at 860, 792 P.2d at 885. The Court may overturn the Board's decision where the Board's findings: (a) violate statutory or constitu-

tional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party attacking the Board's decision must first illustrate that the Board erred in a manner specified in I.C. § 67-5279(3), and then that a substantial right has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 587 (1998). If the Board's action is not affirmed, "it shall be set aside ... and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## III.

## THE PETITION FOR JUDICIAL REVIEW IS TIME BARRED.

■ The approval of the preliminary plat for Phases I and II of the development authorized HG2 to begin construction that would permanently alter the land. In fact HG2 was required to make major improvements and incur significant expenses applicable to both Phase I and II before it could obtain final plat approval. For example, HG2 was required to dedicate a portion of its property for a realignment of a road, relocate a canal, replace a bridge over the canal on a public road, construct an irrigation delivery system, install a fire protection system for the entire subdivision, install underground power and telephone facilities, and install a road.

The Stevensons were given notice of the proceedings for preliminary plat approval, because they were abutting land owners to a portion of the subdivision, and they did appear at the hearing. While the development involved two phases, it is clear that HG2 was proposing one subdivision in those two phases.

■ In *Payette River Property Association v. Board of Commissioners of Valley County*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999), this Court held "that where preliminary plat approval and the issuance of per-

mits places a developer in a position to take immediate steps to permanently alter the land before final approval, the decision is final for purposes of challenging the authorized action that permits the material alteration and can be reviewed on appeal." This principle was reiterated in *Rural Kootrenai Org. v. Kootenai County*, 99.26 ISCR 1054, 1057:

> According to *Payette River*, appealability turns on whether preliminary plat approval allows the developer to take immediate steps to permanently alter the land before final plat approval. The process for obtaining preliminary plat approval is not a uniform process; it varies from one county ordinance to another. Thus, whether an order granting preliminary plat approval is appealable depends upon the nature of the governing ordinance. The governing ordinance in this case allowed the developer to take immediate steps to permanently alter the land by constructing the necessary infrastructure prior to final plat approval. No further action by the Board was required before the developer can begin construction. The Board's order granting preliminary plat approval is a final decision subject to judicial review.

The preliminary plat approval of Phase I and Phase II of the Prairie Sun Ranch Subdivision was a final, appealable order. No appeal was taken from that order. HG2 undertook construction to meet the conditions in the preliminary plat approval. The time for appealing that approval has passed.

The appeal in this case is dismissed. In view of this decision it is not necessary to consider other issues that have been raised.

## IV.

## CONCLUSION

The petition for judicial review is dismissed. Costs are awarded to HG2. No attorney fees are allowed.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.